

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2025 MAR -3 PM 2:01

# United States District Court

for the

## Eighth District of Nebraska

| | | |
|---|---|---|
| Kevin Rogers )<br>- plaintiff )<br>)<br>v. )<br>)<br>Paramount Global )<br>- defendant )<br>_____ ) | Case No. 4:25CV3043<br><br><br><br>Jury Trial:  Yes ___   No _X_ | |

## COMPLAINT FOR A CIVIL CASE

### Question at issue
USC 15 §52 – prohibition of dissemination of false advertisements

### The Amount in Controversy
74,130,000 US dollars

PAGE 1 OF 12

## Statement of Claim

1. Plaintiff believes defendant, the owner of CBS News, falsely advertises at CBS News' website that incoming news tips are read and evaluated without racial or gender bias – or read at all, by anyone.

2. On March 8, 2024 plaintiff, a Caucasian American, submitted to CBS News what he believes was a spectacular and thoroughly documented news tip. Within the tip was the advisement that documentation of the tip's allegations of wrongdoing could be viewed at a Youtube channel, and said channel's web address was provided.

3. Plaintiff believes it is not an exaggeration to describe the news tip as spectacular and plaintiff believes the court will agree after perusing this pleading's supporting exhibits.* Yet despite the top-notch newsworthiness of the information plaintiff submitted as a tip, there is little, if any, indication defendant's journalist-employees ever investigated it.

4. Plaintiff believes there are only two explanations for his news tip not being looked into. Either defendant's employees do not read incoming tips, or they evaluate tips by applying discriminatory policies that discourage or forbid reporting on white people and/or men being

---

* Plaintiff accidentally discovered that a hereditary skin disease enables scar-free burn healing. He spent years working to convince scientists to look into the phenomenon and pushed a few simple ideas concerning the role sweat glands play in burn healing. Plaintiff was ultimately cheated out of recognition by numerous persons who, since 2006, have publicly lied about the origins of spray-on skin for burns while also orchestrating an elaborate coverup of their deception. Spray-on skin is a huge advance in reducing burn scars. It is based entirely upon plaintiff's ideas.

unjustly treated by the government and/or public institutions such as universities. A news story about a white person, or a man, being unjustly treated by the government and/or a large university would contradict contemporary employee training meant to address white privilege, or male privilege, and the need to give greater voice to women and people of color; the need to promote diversity, equity, and inclusion.

5. Thus plaintiff believes defendant's employees either do not read incoming news tips, or they rejected his news tip solely because of his race and/or gender. Plaintiff further believes defendant's failure to disclose its employees' use of discriminatory criteria in evaluating news tips is, itself, a form of false advertising.

6. On March 30, 2024 plaintiff submitted to CBS News a re-worded version of his March 8, 2024 news tip. The tip was reworded and re-submitted because plaintiff feared his first effort may not have clearly explained the injustice he had endured or how he had made possible a historic burn care breakthrough. Once again, within the tip, there was the advisement that the tip's allegations were documented at a Youtube channel, and said channel's web address was provided. This pleading's exhibits will show that few, if any, journalists visited the channel in the months after plaintiff submitted his news tips. And no journalist explored the channel to the extent needed to write a story.

7. On April 28, 2024 plaintiff submitted an entirely different tip to CBS News; one relating how he had been racially discriminated against by the New York City-based activist group, the National Action Network (hereafter NAN). Plaintiff believes his April 28, 2024 tip, like his earlier

tips, was clearly worded and understandable; perfectly newsworthy and well-documented; and defendant's employees were given the web address of a Youtube channel where they could peruse documentation of the tip's allegations. As of June 21, 2024, no one had visited the Youtube channel documenting the allegations in plaintiff's April 28, 2024 news tip.

### Defendant is Advertising a Service

8. Plaintiff believes that when a news organization invites news tips it is advertising the provision of a service. Inviting news tips is how news organizations advertise that they offer the service of publicizing information for tipsters.

9. News organizations, of course, do not accept money in exchange for publicizing information. That is what publicists and advertising agencies do. Instead, news organizations insist that their publicizing services be paid for by way of bartering. A tipster must offer information that will bolster a news organization's readership or viewership or reputation. A news tip must meet certain qualifications to be deemed valuable and worthy of being publicized. It must be interesting, or intriguing, or in the public interest. It should also be fairly well-documented if it involves allegations of wrongdoing.

10. Plaintiff believes no reasonable journalist could read any of his three news tips and conclude that no further investigation was merited. If the tips were read by anyone, the use of

racially biased, or gender biased, screening policies would be the only explanation for defendant's employees' lack of interest.

## Quick Notes on Plaintiff's Youtube Channels

The Youtube channel supporting plaintiff's news tips of March 8, 2024 and March 30, 2024 shall hereafter be referred to as the SOS-focused channel.

The Youtube channel supporting plaintiff's news tip of April 28, 2024 shall hereafter be referred to as the NAN-focused channel.

## The Exhibits

**Exhibit 1a.** Video showing plaintiff's news tip of March 8, 2024 being sent.

**Exhibit 1b.** For convenience: Easy-to-read text of the news tip that is exhibit 1a.

**Exhibit 2.** Video showing plaintiff's news tip of March 30, 2024 being sent.

**Exhibit 3.** Video showing plaintiff's news tip of April 28, 2024 being sent.

## Plaintiff's SOS-focused Youtube Channel Was Simple

&

## Few, If Any, Journalists Visited It

**Exhibits 4a, 4b, and 4c.** Screen grabs showing what journalists would have seen had they visited plaintiff's SOS-focused Youtube channel.

Exhibit 4a shows the channel under Youtube's "home" tab.

Exhibit 4b shows the channel under Youtube's "videos" tab.

Exhibit 4c shows the channel under Youtube's "playlists" tab.

**Exhibits 5a, 5b, 5c, and 5d.** Screen grabs showing how often, and when, plaintiff's SOS-focused Youtube videos were watched – or at least clicked on.

Exhibit 5a is a grab taken on July 15, 2024. It shows the channel received four visits during the four months following plaintiff's submission of his March 8, 2024 news tip. (The tips submitted to defendant were also submitted to other news organizations and the channel was accessible to the public. Thus, visits to it may or may not have been made by defendant's employees.)

Exhibit 5b is another grab taken on July 15, 2024. It shows the channel's feature video received four views during the four months following plaintiff's submission of his first news tip. (Here again, it may or may not have been defendant's employees who viewed the video, or otherwise clicked on it.)

Exhibit 5c is another grab taken on July 15, 2024. It shows plaintiff's home-made legal complaint against the University of Pittsburgh et al received no views during the four months following plaintiff's submission of his first news tip. *Any journalist who intended to investigate plaintiff's news tips would absolutely-positively want to look at plaintiff's complaint against Pitt*

PAGE 6 OF 12

*et al. The complaint and its supporting documents contain a treasure trove of information on some very extreme misconduct on the part of dozens of individuals; some US Army employees, others University of Pittsburgh employees, and of course Australia's renowned Dr. Fiona Wood.*

Exhibit 5d is a compilation of grabs taken on July 15, 2024. It shows there had been no views of the first 20 documents that supported plaintiff's home-made legal complaint against the University of Pittsburgh et al. Plaintiff believes the views of the later 13 documents were the result of his clicking on them, not a journalist's.

### Plaintiff's NAN-focused Youtube Channel Was Simple

### &

### No Journalists Visited It

**Exhibits 6a, 6b, 6c, and 6d.** Screen grabs taken on June 21, 2024, and showing what journalists would have seen had they visited plaintiff's NAN-focused Youtube channel.

Exhibit 6a shows the channel under Youtube's "home" tab.

Exhibit 6b shows the channel under Youtube's "videos" tab.

Exhibit 6c shows the channel under Youtube's "playlists" tab.

Exhibit 6d shows that, as of June 21, 2024, there were no visitors to the channel after April 28, 2024, when plaintiff sent defendant his news tip concerning racial discrimination at NAN. (The five views on April 5, 2024 would have been from plaintiff visiting his channel.)

## The Feature Video and Legal Complaints

## at

## Plaintiff's Youtube Channels

**Exhibit 7a.** The feature video from plaintiff's SOS-focused Youtube channel. It explains and proves a lot in its ten-and-a-half minutes.

**Exhibit 7b.** Plaintiff's self-written legal complaint against the University of Pittsburgh et al, as it appeared at his SOS-focused Youtube channel. (If this dispute goes to trial, the documents supporting exhibit 7b may still be viewable at plaintiff's SOS-focused Youtube channel. They are not included as part of this pleading because they require upwards of four DVDs.)

**Exhibit 8.** Plaintiff's self-written legal complaint against NAN, as it appeared at his NAN-focused Youtube channel. (If this dispute goes to trial, the documents supporting exhibit 8 may still be viewable at plaintiff's NAN-focused Youtube channel. They are not included as part of this pleading because they require upwards of nine DVDs.)

**Exhibits 9a, 9b, 9c, and 9d.** Plaintiff's first two news tips alleged that one of Australia's most famous persons, Fiona Wood, had been – and was continuing to – publicly lie about the origins of spray-on skin; and was deeply involved in a US Army-orchestrated coverup of her lies. Exhibits 9a, 9b, 9c, and 9d document Ms. Wood's fame and acclaim in Australia.

Plaintiff Also Sent a News Tip in 2022

&

It Also Did Not Result in Reportage

**Exhibit 10.** Video showing plaintiff sending an SOS-focused news tip, in March of 2022, to three news organizations, one of which was defendant-owned CBS News. At 54 seconds into the video, one sees the letter going to CBS News' postal address for news tips. Plaintiff covered his home address on the letters because he was considering putting the video on Youtube for public viewing by – potentially – millions of people.

Plaintiff hereby wishes to mention that, in 2022, the content at his Youtube channel was different than the content in 2024. There was a different feature video; a different homemade civil complaint against Pitt et al; and a somewhat different batch of documents supporting the complaint's allegations of wrongdoing. Plaintiff's Youtube channel was different in 2022 and yet – plaintiff believes it thoroughly documented the wrongdoing/scandal he described in his 2022 news tip.

**Exhibit 11.** Documentation of defendant's December of 2023 trailing twelve months of corporate revenue, as reported at the finance section of Yahoo.com, in August of 2024. Exhibit 11 will be referenced in this pleading's request for relief.

## Relief

Plaintiff seeks compensatory damages of 74,130,000 US dollars; an amount equal to one-quarter-of-one-percent of defendant's December of 2023 trailing twelve months of corporate revenue, as shown at the finance section of Yahoo.com, in August of 2024; as per exhibit 11.

As regards economic damages, plaintiff estimates he spent around 200 hours organizing and preparing his Youtube channels. The time spent included learning video editing software, preparing a script, converting photos and PDF files into video files, and learning how to upload and organize playlists of videos on Youtube as well as learning how to use Youtube in general. Plaintiff also had to write *this* legal complaint, which also involved a substantial amount of time and effort.

As regards punitive damages, plaintiff has found defendant's conduct downright exasperating. But more important than plaintiff's negative experience are the issues of public interest raised in plaintiff's news tips and at his Youtube channels. Among those issues are:

    a) An apparent US Army misinformation campaign conducted to benefit a famous Australian doctor who, prior to her teaming up with the US Army, had lied to Australians for years about her lack of success using spray-on skin.

    b) The apparent proffering of false information to FDA product safety reviewers.

    c) The strong possibility that the US Army created a fake medical supplies

company to help a famous Australian doctor deceive various nations' patenting officials, including US officials.

d) The possibility of a further burn care breakthrough if the news media would only expose the current, ongoing public lies and corruption.

e) The US Congress' apparent waste of ~100 million dollars on fruitless burn research – as a direct result of the US Army's- and various individuals' ongoing public lies and lies to Congress.

f) The strong possibility that thousands of hand eczema sufferers, world-wide, could be spared from useless and expensive medical treatments.

g) The strong possibility that one of America's most prominent civil rights organizations practices racism and utilizes long-established procedures to gaslight and discourage supplicants who are not of the organization's preferred race.

And finally, when this dispute reaches the court, defendant may still be able to get significant economic value out of plaintiff's news tips. Items (a) through (g), above, strongly suggest a story with staying power. Members of Congress could hold hearings, for example; they presumably might want to, given the decade-or-more of lies they have been fed regarding spray-on skin's origins.

Much of course depends on whether or not plaintiff can, by himself, break the story. Plaintiff's efforts to make his story "go viral" are ongoing; they are varied and include – or may

include – or may have included in the past – directly contacting eczema sufferers, burn survivors, so-called online influencers, and miscellaneous others. Suffice to say, if the economic value of the information plaintiff submitted to defendant is diminished by its being publicized before defendant publicizes it, that would be defendant's own fault.

Respectfully submitted,

*Kevin Rogers – plaintiff*
538 N 24th Street, apt. 1
Lincoln, NE 68503

Phone: 402-475-6684
Email: kevinrogers34@hotmail.com